**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Jesse Graybill, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action 2:17-cv-418 |
| | : | Judge Smith |
| Petta Enterprises, LLC, | : | Magistrate Judge Deavers |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM OF LAW FOR FINAL APPROVAL OF RULE 23 CLASS SETTLEMENT AND FOR APPROVAL OF FLSA SETTLEMENT**


Matthew J.P. Coffman (0085586)　　　　Peter A. Contreras (0087530)
**Coffman Legal, LLC**　　　　　　　　　　**CONTRERAS LAW, LLC**
1457 S. High St.　　　　　　　　　　　　PO Box 215
Columbus, Ohio 43207　　　　　　　　　Amlin, Ohio 43002
Phone: 614-949-1181　　　　　　　　　　(614) 787-4878
Fax: 614-386-9964　　　　　　　　　　　(614) 923-7369 (fax)
Email: mcoffman@mcoffmanlegal.com　　peter.contreras@contrerasfirm.com
*Attorneys for Plaintiff and Class*　　　　*Attorneys for Plaintiff and Class*

1

# **INTRODUCTION**

On April 25, 2018, the Court preliminarily approved the proposed Rule 23 and 216(b) settlement in this matter. In doing so, the Court (1) conditionally certified a settlement class under Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) consisting of all employees of Petta Enterprises, LLC and Petta Enterprises of PA, LLC (together "Petta" or "Defendants") at any time from May 16, 2015 through the date of the Preliminary Approval Order who worked as non-exempt and/or hourly employees and performed work as a field Supervisor or Technician; (2) approved the proposed class notice packet and directed the settlement administration company ("Optime Administration, LLC" or "Optime") to distribute the notice packets; (3) appointed class counsel; and (4) scheduled the fairness hearing for September 18, 2018 at 1:30 p.m.

As shown through this Motion and the supporting evidence, 41% of the net settlement fund was claimed, no Class Member objected to the settlement, and no Class Member opted-out of the settlement. Counsel supervised Optime in the administration of the notice packets to ensure all necessary steps were taken to notify the Class Members of their rights under applicable wage-hour laws, including forwarding returned notice packets to new addresses, searching the National Change of Address Database to re-mail notice packets, and responding to any requests from Class Members for additional notice packets.

Through these efforts, the Parties achieved a successful Rule 23 and 216(b) settlement, which provided each of the thirty (30) participating Class Members individual settlement awards based on the settlement allocation formula described in the Motion for Preliminary Approval and the Settlement Agreement. Therefore, the Court should approve this settlement.

## **I.     ARGUMENT**

A. **FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE**

Before a district court approves a settlement, it must find that the settlement is "fair, reasonable, and adequate." *Johnson v. Midwest Logistics Sys., Ltd.*, 2013 WL 2295880 (S.D. Ohio May 24, 2013) (*citing UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). A district court looks to seven factors in determining whether a class action settlement is fair, reasonable, and adequate:

> 1) the risk of fraud or collusion;
> 2) the complexity, expense, and likely duration of the litigation;
> 3) the amount of discovery engaged in by the parties;
> 4) the likelihood of success on the merits;
> 5) the opinions of class counsel and class representatives;
> 6) the reaction of absent class members; and
> 7) the public interest.

*Id.* (*citing UAW*, 497 F.3d at 631). In reviewing a proposed class action settlement, the district court has "wide discretion in assessing the weight and applicability" of the relevant factors. *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992.) As set forth below, the settlement meets the standard for final settlement approval and should be approved by the Court.

1. **The Absence of Fraud or Collusion Supports Approval**

In granting the Motion for Preliminary Approval, the Court recognized that a bona fide dispute over wages exists. The Parties fiercely contended liability and took diametrically opposed positions as to whether the certification of any class could be maintained through trial. Only after extensive settlement negotiations, the exchange of class wage-hour data, independent factual investigations, and a full day of mediation, did the Parties reach a proposed settlement amount. Even then, the Parties continued to negotiate regarding the settlement timing, terms, and scope of release.

Ultimately, the settlement reached is reasonably related to the potential liability and each Class Member who properly participates in the settlement will receive his pro rata share, which is derived from his actual compensation received and actual number of weeks worked. The fact that approximately 41% of the settlement fund was claimed by thirty (30) participating Class Members establishes that the settlement was free of any collusion.

2. **The Complexity, Expense, and Duration of this Case Supports Approval**

This factor strongly favors approval because, absent settlement, continued litigation would require the Parties to conduct formal and protracted discovery, resume briefing and litigating FLSA conditional certification and Rule 23 certification, engage in dispositive motion practice, and, if unsuccessful, proceed to trial (with the possibility of subsequent appellate review). The completion and resolution of the complex issues raised in this case would substantially delay any potential payment by several years. Rather than continue down this path, the settlement confers a substantial and immediate benefit upon the Class Members in the form of monetary compensation.

Achieving a settlement like this is important because it provides the Class Members with a guaranteed Settlement Award, now. Years down the road, Petta and its owners may no longer be in business or may be judgment proof.  Thus, this factor weighs in favor of approval.

3. **The Stage of the Proceedings Supports Approval**

Before and since filing the Complaint in May 2017, Class Counsel extensively investigated the facts, claims, and defenses at issue in the case through interviews with the Representative Plaintiff and potential Class Members, reviewed documents produced by all Parties and non-parties, and analyzed significant data relevant to the potential damages. The

Parties' diligence allowed each side to understand the potential risks associated with litigation and the strengths and weaknesses of each side's contentions.

### 4. There Exists a Bona Fide Dispute over Success on the Merits

The Parties still do not agree on liability. While Plaintiffs contend that Petta is liable under the FLSA and related state laws for back wages, liquidated damages, attorney fees, and costs, Petta takes the opposite position. Petta averred (and continues to aver) that it properly paid the Class Plaintiff and all Class Members at all relevant times to this suit. Pursuant to 29 U.S.C. § 259, Petta also pled an affirmative defense seeking blanket immunity from liability on the grounds that its alleged failure to pay Plaintiffs or any Class Member overtime wages, if at all, was in good faith in conformity with and in reliance on an administrative regulation, order, ruling, approval, interpretation, administrative practice, and/or enforcement policy of the United States Department of Labor and/or the Ohio Department of Commerce, Bureau of Wage and Hour.[1]

If the litigation were to continue, Class Plaintiff would face a number of high-stake risks before trial that could have limited, or even eliminated, claims, including denial of a motion to amend to add additional state law claims, possible decertification of the FLSA collective action, denial of Rule 23 class certification, and dispositive motions on liability, liquidated damages, and willfulness. Despite these real and significant risks, Class Plaintiff and Rule 23 Class Members will receive substantial relief from this settlement. Weighing the risks against the benefits of a settlement, the settlement amount is reasonable.

### 5. Class Counsel and Class Representatives Support Approval

The Court appointed Coffman Legal, LLC and Contreras Law, LLC as Class Counsel. As previously explained, these firms have diligently litigated this action and, after substantial

---

[1] *See* Doc. 2 at Section VIII, ¶2.

investigation and analysis, negotiated a fair settlement. These firms also are very experienced in wage and hour litigation and both almost exclusively devote their practice to employment litigation. *See generally* Exhibits A and B, Declarations of Matthew J.P. Coffman, ¶35-38 and Peter Contreras, ¶35-38.

Both Class Counsel and the Representative Plaintiff have endorsed the settlement, which favors approval.

### 6. The Class Members Reacted Well to the Settlement

According to Optime, numerous efforts were made to effectuate notice, including the searching of the National Change of Address database, skip-tracing, and the distribution of the notice packets in accordance with the Court's Order for Preliminary Approval. *See* Exhibit C, Declaration of Optime, ¶2-5.

The settlement received an overwhelmingly positive response, with approximately 41% of the settlement fund being claimed. *Id.*, ¶6. No Class Members objected or excluded themselves from the settlement. *Id.*, ¶6. A total of thirty (30) participating Class Members returned claims and will receive individual settlement based on the settlement allocation formula provided by the Settlement Agreement. *Id.*, ¶6.

Accordingly, this factor likewise weighs in support of approval.

### 7. Approval is in the Public's Interest

Public policy generally favors settlement of class action lawsuits. *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (citation omitted). The settlement provides immediate and substantial relief for the participating Class Members, avoids further litigation of the wage and hour claims in this complex case, and frees the Court's valuable judicial resources. As a

result, the Court should conclude that this factor weighs in favor of approving the proposed Settlement because the public interest is served by resolution of this action.

**B.     THE SERVICE AWARD IS REASONABLE**

Service awards are common as a method for Courts to compensate Representative Plaintiffs for shouldering the risks of litigation on behalf of others. *See Dillworth v. Case Farms Processing, Inc.* No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (authorizing a total of $10,000.00 in enhancement awards to two Representative Plaintiffs). In this case, the Representative Plaintiff played a crucial role in answering questions of class counsel and other Participating Class Members regarding the case, the issues, and the settlement. *See* Exhibits A and B, Declarations of Matthew J.P. Coffman, ¶16-21, and Peter Contreras, ¶16-21. The Representative Plaintiff also provided documents essential to understanding the pay practices at issue. *Id.* Without his direct and extensive involvement, such a settlement would not be possible. The requested Enhancement Award is reasonable and should be approved. *Id.*

**C.     THE ATTORNEY FEES AND COSTS ARE REASONABLE**

An award is reasonable if it is "adequately compensatory to attract competent counsel yet which avoids a windfall for lawyers." *See Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir. 2008) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983)). District courts within the Sixth Circuit have the discretion to select one of two methods for calculating an award of attorneys' fees in a common fund case by using either a percentage of the fund calculation or a lodestar multiplier. *Rawlings v. Prudential–Bache Properties, Inc.,* 9 F.3d 513, 516–17 (6th Cir. 1993). Regardless of how the award is calculated, the final amount must be reasonable. *Smillie v. Park Chem. Co.,* 710 F.2d 271, 275 (6th Cir. 1983). The contingent nature

of the fee agreement also meant that counsel bore the risk of receiving no fee in the event that a less than favorable result was achieved.

In litigating this case since May of 2017, Class Counsel incurred a lodestar fee and costs in excess of $46,514.12 as of the date they submitted their Motion for an Award of Attorney's Fees and Reimbursements of Costs.[2] Since filing their Motion for an Award of Attorney's Fees and Reimbursements of Costs, Class counsel has incurred and will continue to incur several thousand dollars more in additional time obtaining final approval and implementing final settlement and dismissal of this case. Nonetheless, Class Counsel seeks a total attorneys' fee and costs award of $41,054.12, which is inclusive of the reimbursement of $2,099.12 in out-of-pocket expenses advanced by Counsel. The requested award and costs reimbursement is therefore approximately a $5,460 reduction in lodestar before accounting for the additional several thousands of dollars incurred since filing their Motion for an Award of Attorney's Fees and Reimbursements of Costs on March 26, 2018 and that will continue to be incurred in this matter through dismissal.

The Fair Labor Standards Act ("FLSA") has a fee-shifting provision which provides that reasonable attorney fees and costs should be awarded to a prevailing party. 29 U.S.C. §216(b). The purpose is "to insure effective access to the judicial process by providing attorneys for prevailing plaintiffs with wage and hour grievances; [o]bviously Congress intended that the wronged employee should receive his full wages…without incurring any expense for legal fees or costs."[3] In a claim for attorney's fees, the court will determine the number of hours reasonably expended on the litigation and multiply that figure by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Reed v. Rhodes*, 179 F.3d 453 (6th Cir. 1999) ("a

---

[2] *See* Doc. 18, filed March 26, 2018.
[3] *See United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Association, Local 307, et al. v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 501 (6th Cir. 1984).

court must first determine the lodestar amount by multiplying the reasonable number of hours billed by a reasonable billing rate") (internal citations omitted). The resulting yield is what is known as the "lodestar."

In arriving at the reasonable hourly rate, the court typically looks to the prevailing rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *Adcock-Ladd*, 227 F.3d at 350 (quoting *Blum*, 465 U.S. at 895). See also *Project Vote v. Blackwell*, Case No. 1:06-cv-1628, 2009 WL 917737 *10-11 (N.D. Ohio Mar. 31, 2009) (citing *Blum*, 465 U.S. at 895-96 n. 11). "Courts will frequently award fees based on an attorney's customary rate, because 'normal billing rates usually provide an efficient and fair short cut for determining the market rate.'" *Project Vote*, 2009 WL 917737 at *11 (quoting *Dowling*, 2008 WL 906042 at *2)(internal citations omitted).

Class Counsel demonstrated that the requested award and costs reimbursement is reasonable in their Motion for an Award of Attorney's Fees and Reimbursements of Costs.[4] The Court ordered Class Counsel to provide itemized costs and billing records to justify their declarations and the requested reimbursements contained therein.[5] Class Counsel filed itemized billing and costs records with detailed billing/costs entries on August 31, 2018 that allows the Court to determine that the requested fees and costs are reasonable.[6]

Accordingly, the total requested attorneys' fee and costs award of $41,054.12, inclusive of the reimbursement of $2,099.12 in out-of-pocket expenses advanced by Counsel, is reasonable and should be approved. *See* Exhibits A and B, Declarations of Matthew J.P. Coffman, ¶34 and Peter Contreras, ¶34.

---

[4] *See* Doc. 18.
[5] *See* Doc. 20.
[6] *See* Doc. 21.

## II. CONCLUSION

For all of the reasons stated above, Class Plaintiff respectfully requests that the Court enter the proposed Final Approval Order, Exhibit D, and Final Judgment, Exhibit E.

Date: September 4, 2018

                                          **COFFMAN LEGAL, LLC**

                                          /s/ *Matthew J.P. Coffman*
                                          Matthew J.P. Coffman (0085586)
                                          1457 S. High St.
                                          Columbus, Ohio 43207
                                          (614) 949-1181
                                          (614) 386-9964 (fax)
                                          mcoffman@mcoffmanlegal.com

                                          **CONTRERAS LAW, LLC**

                                          /s/ *Peter A. Contreras*
                                            Peter A. Contreras (0087530)
                                            PO Box 215
                                            Amlin, Ohio 43002
                                            (614) 787-4878
                                            (614) 923-7369 (fax)
                                            peter.contreras@contrerasfirm.com

                                          *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2018, the foregoing was filed via ECF and that notice of this filing served on all counsel of record.

                                            /s/ *Peter A. Contreras*
                                            Peter A. Contreras (0087530)